UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

------------------------------------------------ X
OLIVET UNIVERSITY,                          :
                                            :
                        Plaintiff,          :
                                            :          **COMPLAINT**
        -against-                           :          **WITH JURY DEMAND**
                                            :
                                            :          **CASE NO. 8:25-CV-00762**
DEV  PRAGAD,  NANCY  COOPER,  :
and DAYAN CANDAPPA                          :
                                            :
                        Defendants.         :
------------------------------------------------ X

Olivet University ("Olivet"), by its undersigned counsel, brings this

Complaint against Dev Pragad, Nancy Cooper, and Dayan Candappa for

committing defamation against Olivet.

## NATURE OF THE ACTION

1.  Olivet University is a private, evangelical Christian university dedicated to

    training ministry-bound men and women to preach the gospel to the network

    generation.  Olivet's vision is born of God's enduring hope for a world that is

    "full of the knowledge of the Lord as the waters cover the sea."[1] The fulfillment

    of this Biblical vision inspires, orients, and defines the work of this institution.

    Olivet's main campus is located in Southern California.  It also has extension

    campuses across the United States, including in Florida, Missouri, Tennessee,

---

[1] *Isaiah* 11:9 (English Standard Version)

and Washington, D.C.  Olivet's Florida campus is located in the suburbs of Orlando, within the Middle District of Florida.  Olivet's national accreditor, the Association for Biblical Higher Education, is also located in Florida.

2.  Newsweek Publisher Dev Pragad is the initiator, orchestrator, and publisher—and Nancy Cooper and Dayan Candappa are the writers, editors, and co-publishers—of 20 Newsweek articles systematically attacking Olivet.  This barrage began shortly after Pragad vowed in text messages to attack Olivet with a "nuclear bomb."

3.  Pragad, Cooper, and Dayan conspired to attack Olivet with a covert inner circle inside of Newsweek that includes the Newsweek Publisher, Dev Pragad; Chief Content and Strategy Officer Dayan Candappa; Global Editor in Chief Emeritus and Advisor Nancy Cooper; Contributing Editor-at-Large Naveed Jamali; and Congressional Correspondent Alex Rouhandeh.[2]

4.  Pragad, Cooper, Dayan, and this covert team have altogether authored, edited, and published 20 articles since the Newsweek Publisher's threat of attacking Olivet with a "nuclear bomb."

---

[2] Rouhandeh and Jamali have also been sued for defamation in separate actions.  The Jamali case was previously dismissed by the Southern District of New York.  In the Rouhandeh case, Case No 8:24-CV-00771 pending in the Middle District of Florida, the defendant's motion to dismiss was denied.

5. The systematic attack campaign led by Pragad, Cooper, and Dayan began in 2022 and has continued unabated — the most recent article attacking Olivet was published on December 18, 2024.

6. Rouhandeh was a general assignment reporter for Newsweek at the time he began covering Olivet. He penned several attack pieces against Olivet and was then promoted to the position of Congressional Correspondent. This promotion came after Pragad specifically sent text messages to Olivet members threatening to "nuke everyone" by "[triggering] a congressional investigation [into] Olivet."[3] Since then, at least two congresspeople have given quotes to Newsweek, which Newsweek construed negatively against Olivet (despite the congresspeople claiming these were neutral statements) in articles authored by Rouhandeh.

7. Rouhandeh co-authored many of the attack pieces with Newsweek editor Naveed Jamali. While Rouhandeh was promoted after authoring hit pieces against Olivet, his co-author, Jamali, conversely stated on social media that he feared he would lose his job if he did not attack Olivet. Although Jamali since deleted this post because of its obvious negative implications about his unethical motivation to attack Olivet, the university has retained a recording of Jamali's confession. Jamali reports to Newsweek's Global Editor Emeritus and

---

[3] https://www.techtimes.com/articles/277527/20220703/newsweek-ceo-dev-pragad-faces-lawsuit-for-fraud-and-betrayal.htm

Advisor Nancy Cooper, who in turn reports to Chief Content and Strategy Officer Dayan Candappa, who sits on the executive team of Newsweek along with Newsweek Publisher, Pragad.   Pragad personally solicited ex-Olivet students on social media for information related to their experiences at Olivet to help further the covert inner circle's objectives, despite editor Cooper's claim that the Newsweek newsroom is "independent" from influences outside the newsroom.   Olivet has obtained copies of Pragad's personal communications in which he attempted to solicit information from former students that he could use to attack Olivet.

8. Pragad is a former Olivet member.   In or around April 2022, Pragad publicly announced his disassociation from Olivet.   At the time, Olivet members privately held ownership interests in Newsweek, where Pragad sat as CEO. Pragad was dissatisfied with Olivet after it refused to pressure its members to hand Newsweek ownership over to Pragad for free.   As Publisher, Pragad threatened via text messages to "go to [the] media about Olivet" to attack it with claims of "human trafficking" if Olivet did not reach a "special arrangement" by forcing its members to give Pragad full control of Newsweek. These text messages were sent only days before Cooper, Dayan, and others began Newsweek's systematic attack against Olivet, publishing now 20 articles.

Meanwhile, Cooper ran a smokescreen campaign to ethics-wash Newsweek's illegal motives.[4]

9. Cooper and Candappa have followed through on Pragad's various threats, authoring for publication numerous false and defamatory statements about Olivet. Among other articles, on March 28, 2023, Newsweek published an article (the "Defamatory Article"), orchestrated, written, edited, and published by Pragad, Cooper, and Candappa, stating that "*Olivet University has previously pleaded guilty to money laundering* in New York."[5]

---

[4] Rouhandeh previously repudiated having any knowledge of Pragad's text messages. This is curious, especially given the public justification Rouhandeh's editor, Cooper, gave for Newsweek's ongoing Olivet coverage. In a public, July, 2022 letter titled, "Covering Newsweek's Owners," Newsweek Global Editor in Chief Nancy Cooper wrote, "'[w]e've been accused of being a partisan actor in [a Newsweek] shareholder dispute because we've committed resources to covering a little-known Christian sect [i.e., Olivet] whose latest troubles have drawn scant attention from other media outlets. If these controversies had no connection to Newsweek's owners, we'd likely not cover them either. But it's crucial for us to report on our proprietors…. [W]e have rigorously covered developments related to our owners, and we will continue to do so. *This is a standard ethical practice in U.S. newsrooms. To ignore the story would be passive if not complicit.*" Nancy Cooper, *Covering Olivet's Owners*, NEWSWEEK (July 5, 2022), https://www.newsweek.com/covering-newsweeks-owners. At best, the failure of Cooper and Candappa to investigate the authenticity of their Publisher's text messages represents a brazen and reckless disregard of their ethical and professional duties as editors and journalists to investigate their subject matter. At worst, it is a defamation by omission, a damning demonstration of their willful and intentional turning of a blind eye toward the Newsweek Publisher's wrongdoing. Notably, it is Pragad that claims, dubiously, to be the owner of Newsweek—if so, he is the individual deserving of heightened scrutiny in Newsweek's coverage, according to editor Cooper's letter. Yet ironically, Rouhandeh and Cooper for years ignored the easily verifiable text messages of "owner" Pragad in the name of bashing Pragad's enemy, Olivet—while justifying their attack on Olivet under the smokescreen of Cooper's letter.

[5] Naveed Jamali and Alex J. Rouhandeh, *California Moves to Shut Down David Jang's Olivet University as Feds Circle*, Newsweek (Mar. 28, 2023, 12:27 PM),

10. Pragad, Cooper, and Candappa knew that the statement in the March 2023 Defamatory Article they orchestrated, wrote, edited, and published was false. The public records on which the articles were purportedly based plainly showed that Olivet did not plead guilty to money laundering. Olivet pled to, in relevant part, "conspiracy in the fifth degree," a misdemeanor. Pleading guilty to a "conspiracy" misdemeanor is a very different thing, and is recognized by the typical reader as a very different thing, than pleading guilty to money laundering, which is typically a felony. Indeed, before the March 2023 Defamatory Article was published, Olivet informed Newsweek in writing that Rouhandeh had authored other articles that falsely reported Olivet's plea.[6]

11. The deliberate false reporting by Pragad, Cooper, and Candappa about Olivet's plea had its intended effect, causing serious and ongoing damage to Olivet's reputation. Olivet brings this lawsuit to seek redress for its injuries and to stop Pragad, Cooper, and Candappa from further damaging its reputation.

## PARTIES

12. Plaintiff Olivet is a religious nonprofit corporation organized and existing under the laws of the State of California with its principal place of business in Anza, California. Olivet is a private, evangelical Christian institution

---

https://web.archive.org/web/20230328163859/https://www.newsweek.com/california-moves-shut-down-david-jangs-olivet-university-feds-circle-1790647.

[6] Letter from Jeffrey M. Rosenfeld to Newsweek LLC, Jamali, Rouhandeh, and Cooper, *Request to Retract Defamatory Publication Pursuant to California Civil Code §48a*, dated July 12, 2022.

consisting of multiple colleges, including the Olivet Theological College & Seminary, the Olivet College of Journalism, and the Olivet Institute of Technology.  Olivet Theological College & Seminary was founded in 2000 by evangelical, Korean American pastor Dr. David Jang.  The seminary expanded into a full university in 2004, and thus Olivet University was born.

13. Defendant Pragad, an individual, is the Publisher of Newsweek.  Pragad is a resident of Westchester County, New York, and is domiciled in the Southern District of New York.  Pragad is the initiator, orchestrator, and publisher of numerous defamatory articles that Newsweek published about Olivet.

14. Defendant Cooper, an individual, is the Global Editor in Chief Emeritus and Advisor of Newsweek.  Cooper is a resident of New York County, New York, and is domiciled in the Southern District of New York.  Cooper is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

15. Defendant Candappa, an individual, is the Chief Content and Strategy Officer of Newsweek.  Candappa is a resident of Morris County, New Jersey, and is domiciled in the District of New Jersey.  Candappa is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17. There is complete diversity among the parties because Olivet is a corporation organized under the laws of the State of California with its principal place of business in Anza, California, and Pragad, Cooper, and Candappa are citizens and/or domiciliaries of New York or New Jersey, respectively.

18. The amount in controversy exceeds $75,000.00 (exclusive of interest and costs) because, as alleged herein, the false and defamatory statements published by Pragad, Cooper, and Candappa have caused Olivet reputational, financial, and professional harm.

19. This Court has specific personal jurisdiction over Pragad, Cooper, and Candappa because the effects of their defamatory statements have been felt in Florida and have targeted Florida institutions, namely Olivet University in Florida, and Olivet's accreditor in Florida, the Association of Biblical Higher Education, which Florida has an interest in protecting. This Court has personal jurisdiction pursuant to FRCP 4(k)(1)(A) and Florida's long arm statute, Section 48.193, Florida Statutes, because the defendants operated, conducted, engaged in, carried on their business venture in Florida while transacting business in Florida; committed a tortious act, defamation, the

8

effects of which have been felt in Florida; and engaged in substantial and not isolated activity within Florida. Pragad, Coooper, and Candappa systematically contracted with consumers, readers, and advertisers in the state to supply goods and services in the state when it published magazine articles that reached thousands of consumers in Florida, defaming plaintiff. The articles containing the defamatory content caused injury to the plaintiff in Florida state. Additionally, the defendants' systematic, nationwide promotion and sale of the defamatory articles to consumers across the country, including the promotion and sales within Florida state to Florida consumers, caused injury to the plaintiff in Florida state causing detrimental harm in the state. This harm occurred while the defendants took advantage of the protection of Florida state laws, as well as the dealmaking, advertising, and connections to the globally-recognized Florida media industry, all while deriving substantial revenue from the sales of the defamatory articles and other business activity in Florida state, throughout the several states, and internationally. Specifically within Florida state, the business activities of the defendants, and harms caused to plaintiffs, took place within the Middle District of Florida, as well as within other locales contained within the jurisdictional territory of the district courts of Florida.

20. This court also has specific personal jurisdiction under Supreme Court precedent set by the Court in *Intl. Shoe Co. v. Washington*, 328 U.S. 310 (1945)

because the defendants generated "minimum contacts" with Florida when they created and published defamatory content designed to generate readersship, advertising revenue, and magazine sales in Florida and nationwide. These sufficient "minimum contacts" satisfied the "Due Process Clause" of the Constitution because the traditional notions of fair play and substantial justice are not offended since the injury occurred in Florida state where the defamation was felt by the plaintiff.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the defamation substantially occurred in this District, or, alternatively, under (b)(3) because the defendants are subject to specific personal jurisdiction in this Court.

## FACTUAL ALLEGATIONS

22. Beginning on June 27, 2022, Pragad, Cooper, and Candappa orchestrated, wrote, edited, and published a series of 20 articles full of numerous false and defamatory statements detailing supposed criminal activity, associations, and investigations centering on Olivet.  There are so many false and defamatory statements concerning Olivet throughout these articles that they are too numerous to count.

23. On Thursday, March 20, 2025, Olivet gave pre-suit notice to Pragad, Cooper, and Candappa, respectively, pursuant to Florida Statues Section 770.01.

10

Pragad, Cooper, and Candappa subsequently failed to retract the numerous

defamatory statements in the Defamatory Article.[7]

---

[7] Olivet respectfully requests the Court to note that Olivet has provided ample opportunity for retraction. Olivet repeatedly warned Pragad, Cooper, and Candappa for the last two years to cease and desist its systematic attack campaign. Olivet sent at least three legal cease-and-desist letters; 21 emails warning the magazine it was publishing defamatory content; and made at least two official press releases rebutting Newsweek's stories. These warnings were drastic in nature. In a March 27, 2023 email responding to a Newsweek press inquiry for comment on a pending story, Olivet warned Rouhandeh the following:

> Your company unsuccessfully sued Olivet University, all the while weaponizing its newsroom to pursue stories full of misrepresentations or outright lies to discredit OU in the hope of helping your CEO in his internal shareholder dispute. The lawsuit was dismissed – something you failed to report on – yet you continue to incite and intimidate state agencies against OU…. [Y]ou will be sued very soon in a court of law.

An earlier email, dated July 13, 2022, warned Newsweek as follows:

> Newsweek's behavior is defamatory and a clear violation of the journalistic code of ethics. Newsweek CEO Dev Pragad has several conflicts of interest with Olivet University that have never been disclosed to readers and that are driving his behavior to have his editorial staff attack and defame our institution. The unfortunate reality is that Pragad and his team of attack journalists are trying to rally the public against our dedicated, Christian institution because he is in active litigation in an effort to wrest complete ownership of Newsweek from the husband of our former president. Additionally, Pragad is a former dean at Olivet University. In light of these facts, we have warned Newsweek of defamation litigation.

Yet another, from July 8, 2022, stated:

> [I]t is unfortunate that Newsweek CEO Dev Pragad is violating the longstanding ideals of the fourth estate to empower his legal team, and Newsweek's reporting and editing staff to unfairly target Olivet University and other parties in a blatant smear campaign driven by his personal greed and lack of facts. We plan to aggressively fight Mr. Pragad's allegations in a court of law rather than the courtroom of opinion.

And another, sent November 28, 2022, declared:

> In regard to the coverage by Newsweek, we believe that you ought to make Newsweek readers aware by now that Newsweek CEO Dev Pragad has a serious conflict of interest with Olivet University and its administration. Pragad is facing a lawsuit related to the rightful ownership of Newsweek filed by individuals with former ties to Olivet University. To gain an unfair advantage in that dispute, Newsweek first reported on Olivet

24. Olivet will consider filing a motion to consolidate this action into a single case with the Rouhandeh defamation case, also pending in the Florida Middle

---

University earlier this year, Pragad has also expressly threatened, on several occasions, that he shall use the media to attack and damage the University. And Newsweek's systematic and continuous reporting since then, including by presenting misleading or outright false information to the readers about Olivet University, suggests that Newsweek and [Jamali] are complicit and colluding with Pragad…. Regarding Olivet University and its programs, we shall continue to defend our reputation with nothing but the truth, both in the court of law and elsewhere, and with the knowledge that the heart of Olivet University continues to be for the benefit of our precious students. We sincerely thank God for the protection and blessings He has poured on Olivet University, and for the numerous pathways the Lord has provided for our students across all the campuses in different states to receive a quality Biblical higher education.

In its repeated cease-and-desist letters to Newsweek for defamation and extortion, Olivet expressly warned Newsweek of pending legal action. In a letter dated November 29, 2022, Olivet warned Newsweek counsel that "[i]t has come to Olivet's attention that Mr. Jamali has conspired with Dev Pragad to extort Olivet and to interfere with Olivet's contracts and third parties. Olivet hereby demands that Mr. Jamali cease his misconduct and satisfy the demands set forth herein." Olivet's demands included a full retraction of Jamali's articles and the publication of a "public apology to Olivet describing his part in the extortionate actions." In its cease-and-desist letters, Olivet repeatedly warned Newsweek that its articles contained false assertions of fact, which constitute defamation *per se*. The letters also included express disclaimers that Olivet's legal rights were not limited to the statements addressed in the letters. A cease-and-desist later sent from Olivet to Newsweek on July 12, 2022 provides a clear example of this type of disclaimer:

This letter does not constitute a complete or exhaustive statement of all of Olivet's rights, claims, contentions, or legal theories regarding this matter. Nothing stated herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of Olivet's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Newsweek's articles about Olivet University spawned copycat articles about the school in other publications, to which Olivet sent numerous additional cease-and-desist letters for defamation. A dozen defamatory articles across multiple other publications were legally compelled to be retracted in full due to the falsity of the statements published. Other content was removed from the internet due to hate speech violations. But Newsweek brazenly stands by its lies.

District, due to the common nucleus of operative facts at the center of the controversy.

25. The articles orchestrated, written, edited, and published by Pragad, Cooper, and Candappa repeatedly, falsely tied Olivet University to non-existent or non-applicable money laundering and criminal probes of which Olivet was never the target or the statute of limitations already expired. They repeatedly, falsely tied Olivet to other unsubstantiated or unrelated criminal and civil activity such as racketeering and dealing in counterfeit goods. They falsely state that Olivet is under review in multiple states.

26. In particular, Olivet has never pled guilty to money laundering in the United States, as was falsely indicated on March 28, 2023, when Newsweek published the Defamatory Article about Olivet that was orchestrated, written, edited, and published by Pragad, Cooper, and Candappa that is at issue, here.

27. The Defamatory Article stated that "Olivet University has previously *pleaded guilty to money laundering* in New York." (Emphasis added.)

28. The statement in the Defamatory Article was false and defamatory, and Pragad, Cooper, and Candappa knew it. As was clear from public records to which and Pragad, Cooper, and Candappa had access, Olivet resolved an ongoing investigation by the New York County District Attorney into the financing of certain computer servers used by Olivet and Newsweek by entering into a plea agreement in February 2020.

13

29. Under the terms of the plea agreement, Olivet pled to falsification of business records in the first degree, a felony, N.Y. Penal Law § 175.10, and conspiracy in the fifth degree, a misdemeanor, N.Y. Penal Law § 105.05(1). The plea agreement provided that, if Olivet complied with the terms for 24 months, then all counts of the indictment other than the conspiracy charge would be dismissed, and the plea of guilty to falsification of business records would be reduced to the second degree, a misdemeanor, N.Y. Penal Law § 175.05. After the expiration of the agreed-upon 24-month period, all charges except for the conspiracy charge were in fact dismissed.

30. Olivet did not plead to an offense of money laundering. The plea is clear on its face that Olivet pled to "conspiracy in the fifth degree."

31. Pragad, Cooper, and Candappa knew or should have known that this statement was patently false because, at a minimum, the facts related to Olivet's plea were publicly available.

32. Pragad, Cooper, and Candappa also knew or should have known that this statement was false because Olivet informed Newsweek of this error and of the errors in other articles that Pragad, Cooper, and Candappa had orchestrated, written, edited, and published. On July 12, 2022, Olivet sent Newsweek a cease-and-desist letter. In the cease-and-desist letter, Olivet identified several articles that falsely stated or implied that Olivet had pled guilty to money laundering. The cease-and-desist letter unequivocally stated that Newsweek's

articles "contain false assertions of fact" because Olivet "did not plead guilty to money laundering."

33. In fact, Jamali tweeted in April 2022 that Olivet confirmed the dismissal of all money laundering charges. But, nearly a year later in March 2023, Pragad, Cooper, and Candappa stated that Olivet had pled guilty to money laundering.[8]

34. On April 14, 2023, Olivet sent yet another cease-and-desist letter to Newsweek, again highlighting Newsweek's error. On April 20, 2023, Newsweek issued a "correction" to the Defamatory Article. The correction read: "*This story originally stated that Olivet pleaded guilty to money laundering; it pleaded guilty to falsifying business records in connection with a money-laundering scheme.* Newsweek *regrets the error.*"[9] This purported correction is buried at the bottom of the article and not conspicuous to an average reader.

35. Newsweek's belated correction of the false statements of Pragad, Cooper, and Candappa does not remedy the ongoing harm to Olivet from the false and defamatory statements.

---

[8] Naveed Jamali (@NaveedAJamali), Twitter (Apr. 22, 2022, 4:37 PM), https://twitter.com/NaveedAJamali/status/1517603519175475201 ("The money laundering charges & all felony charges have been dismissed & the case is fully resolved as a misdemeanor matter.").

[9] Naveed Jamali and Alex J. Rouhandeh, *California Moves to Shut Down David Jang's Olivet University as Feds Circle*, Newsweek (Apr. 20, 2023 at 4:24 PM), https://www.newsweek.com/california-moves-shut-down-david-jangs-olivet-university-feds-circle-1790647 (the original publication date of this article was on Mar. 28. 2023).

36. The Defamatory Article was published by Pragad, Cooper, and Candappa with malice after Pragad repeatedly threatened Olivet members in his text messages. From January to March 2022, weeks before the attack campaign was launched by Newsweek against Olivet, Pragad stated the following: that he would launch a "nuclear bomb" on Olivet; that he would "detonate a nuclear bomb and kill" Olivet; that he would "prepare a news team to write about Olivet"; that he would mow down Olivet like "puppies before a machine gun"; that he would trigger a "congressional investigation" into Olivet; and that he would go to the "media" about Olivet and report it was engaged in "human trafficking." These are but a sampling of his text messages, which have been revealed publicly in the media and in lawsuits. Olivet also has copies of these text messages and testimony from the multiple witnesses who received them directly from Pragad.

37. Olivet filed this lawsuit to obtain remedies for its ongoing injury from the false and defamatory statements made by Pragad, Cooper, and Candappa in the Defamatory Article.

## COUNT I
## DEFAMATION *PER SE*

38. Olivet incorporates by reference paragraphs 1 through 50 and re-alleges them as if set forth fully herein.

16

39. Pragad, Cooper, and Candappa orchestrated, wrote, edited, and published 20 articles, including the Defamatory Article, that were subsequently published on Newsweek's website and these articles repeatedly made false and defamatory statements that Olivet pled guilty to money laundering—it did not; that Olivet is currently under investigation for human or labor trafficking—it is not; that associate Olivet with drug trafficking—it has never been accused of this by any law enforcement agency; and that associate Olivet with numerous other untrue accusations that Olivet is under criminal or any other investigation, when in fact it is not.

40. Specifically, the Defamatory Article makes numerous defamatory statements, as follows:

41. The headline of the Defamatory Article is defamatory for at least three reasons. The headline of the article is, "California Moves to Shut Down David Jang's Olivet University as Feds Circle." The first reason this is defamatory it falsely portrays California as having the power to "shut down" Olivet University. Olivet operates under a religious exemption in California. The term "university" is not protected in California and Olivet is allowed by law to use this name under its religious exemption. Furthermore, Pragad, Cooper, and Candappa clearly knew that Olivet operates campuses in other states, and nationwide. Any reasonable reporter would understand that California only has jurisdiction over the California-based Olivet campus. California has no

jurisdiction, or ability to "shut down" Olivet University, which is (1) allowed to operate in California under religious exemption, and (2) licensed, or, operates under religious exemption, in several other states, independently from California. Portraying California as potentially able to "shut down" Olivet University injures Olivet in its trade or profession because it indicates that Olivet can no longer offer its educational services to students, can no longer engage in business activities with vendors, and can no longer associate with partners, especially Christian organizations and leaders. Newsweek's claim that Olivet could be "shut down" by the state of California is a falsehood that is incompatible with Olivet's proper exercise of its educational mission to train Christian leaders and confer degrees upon them as an institution of higher education.

42. The second reason the headline is defamatory is because it improperly invokes Olivet's founder, David Jang, a retired, evangelical, Korean-American professor. Not only is this a misappropriation of Professor Jang's name and an invasion of his privacy as a retired teacher, but also it defames Olivet by associating its founder with extreme criminal activity for which he has never been accused, nor investigated, whatsoever. In fact, he has been retired for more than a decade, and he had already retired before any of the activity that Rouhandeh alleges took place. Associating Olivet's founder with criminal activity that even Pragad, Cooper, and Candappa fail to connect him to in this

article, is defamatory *per se* (1) because of the nature of the false allegations of serious criminal activity, like money laundering, human trafficking, and more, that Newsweek associates Olivet's founder with in the article, and (2) because this association damages Olivet in its trade or business by ostracizing it from the national and global Christian communities it was founded to serve. Needless to say, the attempt by Pragad, Cooper, and Candappa to associate the founder of a Biblical institution with criminal activity cuts to the core of its ability to do business within Christian circles. This is because Christianity involves salvation by Jesus Christ and sanctification, including the spiritual practice of Biblical principles following the power of the Holy Spirit, that are at odds with the criminal activity alleged by Pragad, Cooper, and Candappa. The intention of Pragad, Cooper, and Candappa is to portray retired Professor Jang as an unethical or untrustworthy Christian hypocrite, and therefore poison the whole university through this false association. This is false and defamatory.

43. The third reason the headline is defamatory is because it states that "Feds Circle." According to Pragad, Cooper, and Candappa, the feds were circling because Olivet was at the center of a federal investigation into serious criminal activity. This is false and defamatory. The Court stated in its Order, at 10, ECF No. 42, that in Florida, defamation *per se* is found when a defamatory statement declares "that a person has committed and infamous crime… [meaning] a felony." *Black's Law Dictionary* defines "felony" as "[a] *serious crime*" that is

"punishable by imprisonment for more than one year or by death." Falsely associating Olivet with a federal investigation implicates Olivet in the commission of a *serious crime*, and is therefore defamation *per se*.

44. The feds were not circling. In fact, Pragad, Cooper, and Candappa utterly abrogated their responsibilities as writers, editors, and publishers to understand the very topic they attempted to cover. First, Olivet was never the target of any such investigation. Therefore, the feds could not be circling around Olivet. Secondly, Newsweek's own reporting tied the start of his so-called fed investigation to a 911 call that occurred on March 27, 2018.[10] The Defamatory Article was published more than five years after the event that Newsweek claims led to the so-called investigation, meaning that the federal statute of limitations (five years) for the very crimes Newsweek alleged had already passed by the time the false accusations of Pragad, Cooper, and Candappa were published.

45. The article published by Pragad, Cooper, and Candappa falsely and defamatorily states that, "California's Attorney General has taken legal action that could *shut down Olivet University*, threatening a devastating blow to a

---

[10] Naveed Jamali and Alex J. Rouhandeh, *Olivet Student's Desperate 911 Call Led to Federal Trafficking Probe*, NEWSWEEK (July 18, 2022), https://www.newsweek.com/olivet-students-desperate-911-call-led-federal-trafficking-probe-1725320 ("On March 27, 2018, at 11:03PM, deputies from the Hemet Sheriff's Station received a call for service from an unknown female…"). See also the contents of the Defamatory Article itself, which states the criminal allegations stem from "an investigation *triggered* by a 911 call from a female student who said she was held at Anza against her will" (emphasis added).

global Christian *sect at the center of a U.S. federal investigation into money laundering, visa fraud and other suspected crimes"* (emphasis added). Pragad, Cooper, and Candappa inaccurately state that California will "shut down Olivet University." California is not able to "shut down" Olivet University, but sought to limit its programs within California state only. This contradicts the reporting elsewhere in the same article by Pragad, Cooper, and Candappa that speaks of Olivet's presence in multiple states, where California has no jurisdiction and no ability to "shut down" Olivet University. This defamation seriously injures Olivet's trade and profession as a Christian university.

46. It is defamatory that Pragad, Cooper, and Candappa characterized Olivet as a "sect." This naked assertion about Olivet's religious affiliation made by Pragad, Cooper, and Candappa was published with not a smidgeon of reporting or evidence to back it up. This statement injures Olivet in its trade or profession because it separates Olivet from its evangelical peers, ostracizes it from potential students and partners, and makes it a pariah, appearing un-Christian, when the whole basis of its institution is its Christian faith. This Christian faith is professed across its website, its marketing materials, its handbooks, and in meetings with professors, students, administrators, and partners. All of these relationships are deeply damaged by the bare, and utterly false assertion, unethically made based on zero actual reporting by Pragad, Cooper, and Candappa. Therefore, calling Olivet a "sect" is defamatory *per se*

21

on the grounds that it speaks to behavior incompatible with the proper ethical or professional conduct of the institution's business trade.

47. As stated above and for the same or similar reasons, it is false and defamatory that Pragad, Cooper, and Candappa stated Olivet was "*at the center of a U.S. federal investigation into money laundering, visa fraud and other suspected crimes*" (emphasis added). Particularly, money laundering is a serious state or federal felony. Visa fraud is also a serious felony. Both of these false accusations consist of defamation *per se*.

48. Pragad, Cooper, and Candappa stated that Olivet committed "other suspected crimes" and "drug trafficking." Olivet alleges that the context of the article must be taken into account. The text "other suspected crimes" comes in an article filled with statements associating Olivet with nefarious activity, including serious felonies like money laundering, human and labor trafficking, and visa fraud, none of which Olivet ever committed. In fact, Olivet has not been held accountable for anything more than a misdemeanor, a crime that by Florida's standards, would not even be serious enough to allow for a defamation *per se* claim. But Newsweek exclusively accuses Olivet of serious felonies. In this context, "other suspected crimes" implies serious felonious activity, and amounts to defamation *per se*. The average reader would understand it as much.

49. Furthermore, Pragad, Cooper, and Candappa hyperlinked the very same sentence about Olivet's "other serious crimes" to its "Olivet University" "Topic" page, which, in turn, contains links that associate Olivet with drug trafficking, including fentanyl trafficking. Other links from Newsweeks' Olivet University and David Jang "Topic" pages, included in the article, associate Olivet with racketeering. Each of these activities are serious federal crimes. This is how Pragad, Cooper, and Candappa associated Olivet with drug trafficking, racketeering, and "other suspected crimes," each false and defamatory *per se*.

50. The statement that "California is by far Olivet's most important state regulator: it is the only one in the United States to confer degree-granting authority on the college founded in 2000 by David Jang, a Korean-American cleric whose organizations have faced a series of legal cases over the past decade" made by Pragad, Cooper, and Candappa is false and defamatory. Newsweek's statement is wrong because Olivet can confer degrees in other states. This statement seriously injures Olivet's trade and business because it implies that Olivet does not have the legal authority to confer degrees in other states, which it does. This false narrative defames Olivet in front of its students in other states, its faculty in other states, its partners in other states, and its potential students, faculty, partners, and friends in all states.

51. The statement that David Jang is a "cleric" is false and defamatory. Professor Jang is not a "cleric," has never held himself out to be a "cleric," has never been a "cleric," and frankly, no one at Olivet University has ever used the term "cleric" to describe anyone, or anything, in their school. This statement is false, defamatory, and harms Olivet in its trade or business for the same or similar reasons as the use of the word "sect" by Pragad, Cooper, and Candappa does. "Cleric" is not a term associated with evangelical Christianity, and by stating that Professor Jang is a cleric, Pragad, Cooper, and Candappa stripped Olivet's founder of his dignity and diminishes Olivet's ability to professionally associate with other Christians by casting a shadow over its founding heritage. This statement orchestrated, written, edited, and published by Pragad, Cooper, and Candappa, like all the others, is false and defamatory. It is also a privacy invasion and constitutes misappropriation of Jang's name, image, and likeness rights.

52. The statement that "one witness who is cooperating with separate Homeland Security investigations into Olivet said messages on computers seized from the Anza campus could be evidence of money laundering activity," by Pragad, Cooper, and Candappa is false and defamatory because it falsely associates Olivet with serious criminal activity, including money laundering, while unethically relying on an anonymous, untruthful witness without credibility.

53. The statement that Olivet "in an email repeated allegations against Newsweek of 'weaponizing its newsroom' because of an ownership dispute" by Pragad, Cooper, and Candappa is false and constitutes defamation by omission. Newsweek failed to investigate its own leadership and failed to accurately represent its own newsroom, which represents a professional failure as well as potential fraud.  Newsweek and the failure to investigate its leadership by Pragad himself, and by editors Cooper and Candappa, is also proof that the newsroom is complicit in the actions of its management. By not investigating such an obviously newsworthy story about its own Publisher, Cooper and Candappa show their awareness that their management has wrongdoing that they should not uncover.  This defames Olivet by omission because Newsweek's failure to report accurately on itself leads the average reader to an impression that Olivet's accurate portrayals of the motivations of Pragad, Cooper, and Candappa and Newsweek are false, hindering Olivet's ability to counter the nefarious, false narrative Pragad, Cooper, and Candappa paint about Olivet, which causes damage to Olivet's trade and business as a Christian institution.

54. The photo of Professor Jang published by Pragad, Cooper, and Candappa is defamatory and the photo's caption is false and defamatory.  The caption reads, "An image of Olivet founder David Jang appears in the top right corner. The California government seeks to shut down the embattled college."  For reasons

25

stated above, use of Jang's name, image, and likeness is false and defamatory, a privacy invasion, and misappropriation. It unjustifiably associates the university's founder with false allegations of criminal activity that he took no part in, thus damaging Olivet's ability to operate in its trade or business. It is also false that California sought to "shut down" Olivet University. Nowhere in any California filings was an objective to "shut down" Olivet stated. Nor is it possible for California to do so, due to Olivet's religious exemption and nationwide footprint. Thus, Pragad, Cooper, and Candappa seriously mislead the public and severely harms Olivet.

55. The statement that "[s]imilar allegations have already led regulators in eight states and territories to shutter Olivet campuses or begin reviews of the college" by Pragad, Cooper, and Candappa constitutes defamation by omission. Pragad, Cooper, and Candappa, either intentionally or recklessly, failed to report that many state regulators found, and continue to find, Olivet compliant, despite the years'-long attacks and agitations by Pragad, Cooper, and Candappa. This glaring omission by Pragad, Cooper, and Candappa defames Olivet because it harms Olivet's business and trade, casting a false, negative shadow over Olivet and ostracizing Olivet from it's students, faculty, and key partners around the country.

56. The statement that "the Department of Homeland Security has an unrelated investigation into whether Olivet laundered money," by Pragad, Cooper, and

26

Candappa is false and defamatory.  Olivet is not the target of any investigation into money laundering, has never laundered money, and does not have any felony record.  Based on Newsweek's own reporting, the underlying activity Pragad, Cooper, and Candappa accuses Olivet of would have begun more than five years prior to the publication of this article, and the federal statute of limitations would have already run.  This utterly false and defamatory statement accuses Olivet of serious criminal activity and is defamatory *per se*.

57. The statement that "[the Department of Homeland Security] is also looking at whether [Olivet] trafficked labor and broke visa laws with regard to the students on its campus, many of whom come from China" orchestrated, written, edited, and published by Pragad, Cooper, and Candappa is false and defamatory.  Olivet never trafficked labor or broke visa laws, with regards to Chinese students or any students, all instances of serious felonious behavior that Pragad, Cooper, and Candappa maliciously and recklessly accuse Olivet of engaging in.  Olivet has thousands of student and alumni witnesses around the world that have frequently been through its campuses and can attest to the utter falsity of this statement.  This is also defamation by omission because in all of his years of reporting on Olivett, and despite Pragad, Cooper, and Candappa sending Rouhandeh himself to visit the town of Anza, where Olivet University is located, Pragad, Cooper, Candappa, and Rouhandeh never even attempted to try to make an appointment with the school for an on-campus

interview. Should Rouhandeh have visited the school, the malicious and reckless false suspicions and reports by Pragad, Cooper, and Candappa would have easily been disproven. They intentionally avoided such a visit because they knew any such visit would disprove their false allegations.

58. The following statements included in the article authored by Pragad, Cooper, and Candappa are false and defamatory: "For years, California had done little to confront Olivet even as other regulators cracked down on the university, accusing it of operating unlicensed campuses, making incomplete disclosures, mismanaging finances and failing to cut ties to 'criminal activity,' among other issues. Both New York and California found Olivet had broken various rules soon after the college pleaded guilty in 2020 to a money laundering charge brought by the Manhattan District Attorney." The article covers California regulators and "other regulators," in the plural, that "cracked down" on the university. That indicates there are at least three regulators: California regulators, and at least two other state's regulators. But, other than California, Pragad, Cooper, and Candappa only cite New York as having had an issue, despite Olivet's operations spanning numerous states. New York represents a single other state regulator, not multiple. This statement creates a false impression and harms Olivet's business and trade because Olivet's state regulators in other states, or other readers of Newsweek, would be given the

impression that Olivet is not in good standing in multiple states. In fact, the opposite is true.

59. The statement made by Pragad, Cooper, and Candappa that Olivet "pleaded guilty in 2020 to a money laundering charge" is false and defamatory *per* se. Olivet never pleaded guilty to a money laundering charge, a fact which Pragad, Cooper, and Candappa know full well, and knew full well at the time of publication, yet still brazenly plowed ahead in orchestrating, writing, editing and publishing, hell-bent on their joint mission with the Newsweek covert team members to drop a "nuclear bomb" on Olivet.

60. The statement by Pragad, Cooper, and Candappa that "Olivet administrators attempted to evade" California state regulators is false and defamatory. In no instance did California regulators ever accuse Olivet administrators of attempting to "evade" them. Rather, if what Pragad, Cooper, and Candappa published is true, California regulators boldly and illegally trespassed on Olivet's private property.[11]

---

[11] The article states that California administrators entered the private property of Olivet University without permission: "'Upon arrival, Bureau staff could not enter the campus location as the campus was secured by a security gate,' according to the complaint, which chronicles the many phone calls investigators made to try to get inside the campus. Finally, 'bureau staff were able to gain access to the campus by following a car who (sic) accessed the gate. No staff was present in the Administration office,' the complaint said." First, this does not describe any attempt by Olivet to "evade" the California regulators. Second, it describes a series of events that would amount to criminal or civil trespassing, especially considering there was no valid search warrant involved.

29

61. The statement by Pragad, Cooper, and Candappa that "[t]he allegations laid out in the 31-page complaint resemble those uncovered by Newsweek's previous reporting" is false and defamatory.  Here, Pragad, Cooper, and Candappa point to their systematic attack campaign against Olivet.  But, none of the allegations listed in the California regulator's complaint were mentioned at all in previous Newsweek reporting.  As detailed in this complaint, Newsweek's coverage focused heavily on falsely associating Olivet with hardcore criminal activity such as money laundering, human trafficking, and visa fraud.  By contrast, the California regulators were concerned with issues like this: "[t]he syllabus for a Bible course wasn't available" and "[t]he professor of microeconomics, for example, delivered a virtual lecture to students who were present on campus in a 'hybrid class' which itself broke the rules."  The last Olivet checked, delivering a hybrid class lecture is not "serious crime" that is "punishable by imprisonment for more than one year or by death."

62. Newsweek's mischaracterization of its own coverage of Olivet therefore constitutes defamation by omission, defamation by implication, and defamation *per se*.  Newsweek attempts to validate its own false and defamatory reporting by stating it is similar to California regulator reports, when these are wildly dissimilar.  This harms Olivet by inaccurately bolstering Newsweek's false association of Olivet with criminal activity, and further

driving a wedge between Olivet, its state regulators, and its stakeholders, injuring Olivet's trade and profession of educational services.

63. The statement by Pragad, Cooper, and Candappa that "*Newsweek* has rejected Olivet accusations that it is reporting on its difficulties because of the dispute" is false and defamatory. This represents defamation by omission. Newsweek failed to report on its "ownership" dispute, diverting readers from the dispute by attacking Olivet, while gaslighting its readers in justifying its attacks on Olivet through a statement that it had a higher ethical obligation to report on its "ownership." This portrays Olivet in a harsh, criminal light and severely hindered Olivet's ability to engage in its trade and profession of Christian ministry and education.

64. The statement by Pragad, Cooper, and Candappa that describes "IBT Media, Newsweek's former corporate parent" as a "Jang-controlled company" is false and defamatory. Professor Jang is a retired teacher that has no connection to any of the allegations within Newsweek's coverage, nor does Newsweek even attempt to draw a connection. IBT Media is not controlled by Jang. The statement published by Pragad, Cooper, and Candappa is utterly false. Further, the reckless name dropping of Jang by Pragad, Cooper, and Candappa defames the university by associating its founder with criminal activity, seriously tarnishing the university's image and preventing it from engaging in its trade or business.

31

65. The statement by Pragad, Cooper, and Candappa, buried near the bottom of the article, that "Bonta's complaint against Olivet made no mention of any criminal conduct" seriously undermines and disproves the title of the article and its entire thrust.  It also proves false the previous assertion by Pragad, Cooper, and Candappa that California regulators' assertions were in any way similar to the repeated defamations of Olivet by Pragad, Cooper, and Candappa, which have taken place as part of a brazen, years'-long attack campaign by Pragad, Cooper, and Candappa, that is ongoing to this day.

66. The statement by Pragad, Cooper, and Candappa that a woman "escaped" Olivet is false and defamatory, and amounts to defamation *per se* because it falsely associates Olivet of a serious felony of human trafficking.  Video footage shows the campus is wide open, and there was no possibility that Olivet could prevent anyone from freely leaving Olivet's campus at any time, nor did Olivet ever do so.  Therefore, the statement that a woman "escaped" is false and defamatory.

67. The following statements in the article are false and defamatory because they falsely associate Olivet with serious, criminal money laundering activity, of which Olivet has never taken a part:

   - "Computers seized during the Anza raid, Newsweek reported, prompted Homeland Security investigators to ask cooperating witnesses

for information on Mark Spisak, head of the World Olivet Assembly, the church founded by Jang which says it has followers in 160 countries."

- "The computers seized from Anza contained chat logs that pointed to the involvement of two people at Olivet in money laundering, one cooperating witness told Newsweek, citing information from a conversation with an HSI agent investigating the case. The witness, who declined to be identified for fear of retribution, shared a separate email sent by the investigator that gave the names of the two people of interest."

- "'They found some chatting record indicating that they are doing money laundry. And that's a crime. From the computers they seized during the OU raid,' the witness said in a message to Newsweek."

68. It is categorically false that Olivet engaged in money laundering.  Pragad, Cooper, and Candappa are not entitled to rely on sources engaged in defamation against Olivet, especially when he knew or should have known the source's statements were false.  Additionally, should Pragad, Cooper, and Candappa attempt to rely on this source for their defense, the source's identity is not protected from discovery.  Pragad, Cooper, and Candappa must be accountable for publishing the defamatory statements from their unreliable source—if such a source even exists, and the statements were not fabricated out of whole cloth.

69. The statement by Pragad, Cooper, and Candappa that "[a]mong the complaints to California's education regulators was that Olivet had too much debt in relation to its assets…. [i]t is required to have a ratio of assets to debt of 1.25 to 1 under California's code of regulations, but has been found to have a ratio of 1.16 to 1" is false and defamatory. First, this ratio was for a single year, another defamatory omission. Second, this statement is also incorrect, because the regulator's measurement is ratio of "current" assets to "current" liabilities, not simply a ratio of assets to debt. This confirms the reckless inability by Pragad, Cooper, and Candappa to understand even the most basic information about the topic they attempted to cover.[12] It also harms Olivet's trade and business by portraying the institution as underfunded, when in reality, Olivet has

---

[12] There are two standards that the California educational regulator uses for financials: (1) For schools that receive federal funding (i.e., the vast majority of accredited schools, as most schools seek accreditation for the purpose of becoming eligible for federal funds), the regulator uses the US Department of Education's composite score to measure financial strength. The minimum score is 1.6 and Olivet has always been over 2.0. (2) For schools that are not receiving federal funds, the regulator uses a single ratio of current assets to current liabilities to measure financial strength. OU was below the 1.25 in one single year. In other words, if Olivet had decided to take federal funds that year, Olivet would have met the "higher" standard of the USDE composite score. The current assets to current liability ratio does not give a full financial overview of an institution. For example, if one takes a loan and pays it over 10 years, then the entire loan amount (cash) becomes a current asset, but only the amount one has to pay in the first year (10% of the amount + a small amount of interest) becomes a current liability. Therefore, taking a loan boosts the ratio. On the other hand, if one builds a new dormitory for students, one would reduce the current assets (cash) as that cash would become a long-term asset (building), therefore reducing the ratio.

undergone rapid growth over the past two decades, and continues its growth trajectory, even now.

70. The language in the Defamatory Article's "READ MORE" box is false and defamatory. The "READ MORE" box associates Olivet with "federal trafficking" and "money laundering," which are serious, false allegations.

71. The statements by Pragad, Cooper, and Candappa at the conclusion of the article further undermine its credibility and highlight the reckless and defamatory nature of its statements at the outset of the article. The Defamatory Article states: "Olivet remains operational in Missouri and Indiana. Educational authorities with both states told *Newsweek* any California action would not affect its standing due to 'religious exemptions.' *Newsweek* did not receive responses from authorities in Texas or Florida where the school also maintains campuses. When Olivet was shut down in New York state, these states said the school's ability to operate would not be affected due to religious exemptions." These statements directly contradict the reckless and false statements by Pragad, Cooper, and Candappa at the top of the article.

72. The correction by Pragad, Cooper, and Candappa is false and defamatory. The correction reads as follows, "**Correction 4/20/23, 4:24 p.m. ET.** *This story originally stated that Olivet pleaded guilty to money laundering; it pleaded guilty to falsifying business records in connection with a money-laundering scheme.* Newsweek *regrets the error.*" First, this correction was not issued in good faith.

35

The damage to Olivet had already been done, and Pragad, Cooper, and Candappa continued with the attack campaign before and after the correct. Second, Olivet did not plead "guilty to falsifying business records in connection with a money-laundering scheme." This is false and defamatory.

73. The statements made by Pragad, Cooper, and Candappa identified—and were "of or concerning"—Olivet, repeatedly referring to Olivet explicitly by name or implicitly by association with various other entities and individuals.

74. The statements made by Pragad, Cooper, and Candappa contain falsehoods about Olivet, whether on their face, and/or by virtue of clear implication that Defendant affirmatively intended, or by malicious, intentional, or reckless omission.

75. The false statements by Pragad, Cooper, and Candappa regarding Olivet were defamatory *per se* because they falsely associate Olivet directly and indirectly with criminal activity.

76. The false statements by Pragad, Cooper, and Candappa regarding Olivet were defamatory *per se* because they "tend to injure one in trade or profession," as they associate Olivet, an evangelical Christian institution, with egregious unethical conduct and beliefs that are irreconcilable and incompatible with the proper exercise of its mission to "[equip] [Biblical scholars and leaders] with the practical skills to preach the Gospel effectively… [and prime] them to

revolutionize the world through Christian mission."[13]  To the extent any of the statements by Pragad, Cooper, and Candappa were not defamatory *per se*, Olivet alleges they were defamatory under the standard elements of a Florida defamation claim.[14]

77. The false and defamatory statements by Pragad, Cooper, and Candappa were published throughout the State of Florida and around the world on the Internet, and were widely circulated by Newsweek to disseminate the statements to its broad audience, including on its homepage as the global top news story; by email blast to its subscribers; and throughout its website sections, pages, and topic pages.

78. Pragad, Cooper, and Candappa made the false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity because of publicly available information that a reasonable writer, editor, or publisher would be expected to find.

79. Pragad, Cooper, and Candappa made the false statements with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effect on

---

[13] *Mission*, OLIVET UNIVERSITY,
https://www.olivetuniversity.edu/aboutolivet/mission.html (last visited Feb. 21, 2025).
[14] To succeed on a defamation claim, a plaintiff must establish (1) publication; (2) falsity; (3) knowledge or reckless disregard as to the falsity; (4) actual damages; and (5) that the statement is defamatory.

Olivet and Olivet's rights after the Newsweek Publisher Pragad declared he would drop on Olivet a "nuclear bomb."

80. The false and defamatory statements by Pragad, Cooper, and Candappa caused Olivet to suffer reputational, financial, and professional harm.

81. To quantify the harm that Olivet suffered and continues to suffer from the Defamatory Article and Newsweek's ongoing attack campaign, it is helpful to look at the influence of a single ad campaign on Newsweek. Newsweek advertising packages involving over a dozen sponsored content articles command advertising rates of over $1,000,000. Olivet has been damaged by Newsweek's influence in an amount far greater than an advertising campaign would cost because not only has Newsweek published 20 articles by Pragad, Cooper, and Candappa in its campaign against Olivet, but it repeatedly boosted its Olivet articles to its top global news positions via website and email blast. Therefore, Olivet seeks damages in an amount no less than $1,000,000.

82. Olivet seeks punitive damages for the malicious Defamatory Article in an amount that would discourage Pragad, Cooper, and Candappa from engaging in such behavior in the future. Olivet seeks punitive damages in an amount no less than $9,000,000.

83. Olivet demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Olivet prays this Court enter orders as follows:

38

1. Finding that Pragad, Cooper, and Candappa are liable for defaming Olivet.

2. Awarding permanent injunctive relief that Pragad, Cooper, and Candappa shall refrain from repeating or in any way furthering the publication of the defamatory statements.

3. Awarding Olivet damages in an amount to be determined at trial in an amount no less than $10,000,000.

4. Awarding Olivet pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Olivet hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: March 27, 2025

Respectfully submitted,
By: */s/ Yen-Yi Anderson*
Yen-Yi Anderson
New York Bar No. 5096268
*Pro Hac Vice* Admission to Florida
Middle District as Olivet Counsel[15]
Anderson and Associates
61 Broadway, Suite 2809
New York, NY 10006
Tel: 646 201 9117
Email: y.anderson@aalawpc.com

Attorneys for Plaintiff
Olivet University

---

[15] Admitted *Pro Hac Vice* in Case No. 8:24-CV-00771 pending in the Middle District of Florida, and seeking admission in this related case.