## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

OLIVET UNIVERSITY,

      Plaintiff,

v.                               Case No: 8:25-cv-762-JSM-AEP

DEV PRAGAD, NANCY COOPER, and
DAYAN CANDAPPA,

      Defendants.

_____

### ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss (Dkt. 17). The Court, having reviewed the motion and response, and being otherwise advised in the premises, concludes that Defendants' motion should be granted for lack of personal jurisdiction.

### BACKGROUND

Plaintiff Olivet University is a religious non-profit California corporation with its principal place of business in Anza, California. Compl. ¶ 12. It was founded in 2000 by Dr. David Jang. *Id.* Olivet's main campus is in Southern California, and it has extension campuses in other states. *Id.* ¶ 1. Olivet has been the subject of several criminal and regulatory investigations, including an investigation by the New York County District Attorney that resulted in Olivet pleading guilty to felony and misdemeanor charges in 2020, Compl. ¶¶ 28–29, and a California State investigation into violations of education regulations. *Id.* ¶¶ 29, 69.

Defendant Dev Pragad is the owner, president, and chief executive officer of Newsweek Publishing LLC ("Newsweek"). Declaration of Dev Pragad, dated May 29, 2025 ("Pragad Decl."), ¶ 4. Newsweek's headquarters is in New York City, and it publishes articles on its website, www.newsweek.com, which is available to readers nationwide. *Id.* ¶ 5. Pragad's role at Newsweek is strictly in business management—he does not control or otherwise play a role in Newsweek's selection, writing, or editing of articles on its website. *Id.* ¶ 7. Pragad resides in New York. He does not own property in Florida, have a bank account or driver's license in Florida, or conduct business in Florida. *Id.* ¶¶ 2–3, 6; Compl. ¶ 13. He generally does not travel to Florida in connection with his work and has not traveled to Florida for work since on or around 2022. Pragad Decl. ¶ 6.

Defendant Nancy Cooper was the Global Editor in Chief of Newsweek until January 2025. Declaration of Nancy Cooper, dated May 29, 2025 ("Cooper Decl."), ¶ 4. She is currently an Editorial Advisor for Newsweek. *Id.* Cooper resides in New York. She does not own property in Florida, have a bank account or driver's license in Florida, conduct business in Florida, or travel to Florida in connection with her work. *Id.* ¶¶ 2–3, 6; Compl. ¶ 14.

Defendant Dayan Candappa is the Chief Content Officer of Newsweek. Declaration of Dayan Candappa, dated May 29, 2025 ("Candappa Decl."), ¶ 4. Candappa resides in New Jersey. He does not own property in Florida, have a bank account or driver's license in Florida, or have any business interests in Florida. *Id.* ¶¶ 2–3; Compl. ¶

15.  He generally does not travel to Florida in connection with his work and has not traveled to Florida for work since on or around 2017.   Candappa Decl. ¶ 6.

Newsweek has published several articles that report on the various regulatory and criminal investigations into Olivet.   Compl. ¶ 22.   Relevant to this case, Newsweek reported on a search of Olivet's California campus in April 2021, by agents from Homeland Security Investigations, the investigative arm of the Department of Homeland Security. Compl. Ex. A at 5.   Sources involved in the incident told Newsweek the search was part of an ongoing investigation, overseen by the U.S. Attorney's Office in Los Angeles, into labor trafficking, money laundering, and visa fraud.   *Id.* at 2, 3, 5.   That investigation, Newsweek reported, was "triggered by a 911 call from a female student who said she was held at [the] Anza [campus] against her will."   *Id.* at 5.

On March 28, 2023, Newsweek published an article authored by Naveed Jamali and Alex Rouhandeh, titled "California Moves to Shut Down David Jang's Olivet University as Feds Circle" (the "March 2023 Article").   *Id.* at 2.   The March 2023 Article reported that California's Attorney General had taken steps to shut down Plaintiff's Anza campus by filing a complaint with the state's Department of Consumer Affairs, "accusing Olivet of 14 violations of education regulations."   *Id.*   The March 2023 Article noted that Olivet was still operating in Missouri and Indiana, and that "Newsweek did not receive responses from authorities in Texas or Florida where the school also maintains campuses."   *Id.* at 6. Olivet's status was also under review by its academic accreditor, the Association for Biblical Higher Education ("ABHE"), the article reported, but the Director of the ABHE

Commission on Accreditation "did not respond to Newsweek's request for comment." *Id.* at 5.

The March 2023 Article also reported that the "Department of Homeland Security has an unrelated investigation into whether Olivet laundered money," and was also "looking at whether it trafficked labor and broke visa laws with regard to the students on its campus, many of whom come from China." *Id.* at 3. "Olivet University," the Article reported, "has previously pleaded guilty to money laundering in New York." *Id.*

Neither Pragad, Cooper, nor Candappa took part in researching or drafting the March 2023 Article. Pragad Decl. ¶ 8; Cooper Decl. ¶ 8; Candappa Decl. ¶ 8. Cooper edited the March 2023 Article from Newsweek's New York office after Jamali and Rouhandeh drafted it, and did not travel to Florida in connection with her editing. Cooper Decl. ¶¶ 8–9. Candappa reviewed the Article and provided edits, but similarly did not travel to Florida in connection with his work on the Article. Candappa Decl. ¶¶ 8–9. Pragad did not review the March 2023 Article or communicate with Cooper, Candappa, Jamali, or Rouhandeh regarding the March 2023 Article prior to its publication. Pragad Decl. ¶ 9; Cooper Decl. ¶ 10; Dayan Decl. ¶ 10.

In this lawsuit, Plaintiff asserts a single claim for defamation against Defendants based on several statements in the March 2023 Article it alleges are defamatory. Compl. ¶¶ 38–83. Defendants move to dismiss the Complaint, arguing that this Court lacks personal jurisdiction over them. As explained below, the Court agrees with Defendants.

4

## STANDARD OF REVIEW

A defendant moves to dismiss an action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied.  *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990).  "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state]." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citations omitted).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Posner*, 178 F.3d at 1214 (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)).  "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to proffer evidence that contradicts the plaintiff's jurisdictional allegations. *See Posner*, 178 F.3d at 1215 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). If the defendant contradicts the plaintiff's allegations, the burden shifts to the plaintiff, this time requiring the plaintiff to prove—not merely allege— jurisdiction by affidavits, testimony, or other documents. *See id.* at 1214–15.

## DISCUSSION

Because the Court concludes exercising personal jurisdiction over Defendants exceeds the limits of the Due Process Clause, it does not address whether the defamation claim falls within the ambit of Florida's long-arm statute. *See Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) ("[T]he Due Process Clause imposes a more restrictive requirement than does Florida's [l]ong-[a]rm [s]tatute." (alterations added; internal quotation marks and citation omitted)); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) ("The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts.").

Defendants' Declarations reflect that they lack sufficient minimum contacts with Florida. Notably, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The inquiry of whether a forum state may assert personal jurisdiction over a nonresident

defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"  *Id.* at 284.

The following two aspects are relevant to assess whether the necessary relationship exists: (1) the relationship must arise out of the contacts that the defendant creates with the forum state; and (2) defendant's contacts must be with the forum state itself, not with persons who reside there.  *Id.* at 284-5.  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him." *Id.*  The Court notes that these principles also apply when intentional torts are involved. *Id.* at 286.

Plaintiff does not point to any evidence that establishes a connection between any of the Defendants and Florida.   Plaintiff's conclusory assertions that Defendants conduct business for Newsweek in Florida, *see* Compl. ¶ 19, are refuted by Defendants' Declarations.   *See* Pragad Decl. ¶ 6; Cooper Decl. ¶ 6; Candappa Decl. ¶ 6.   Also, Plaintiff does not connect Defendants' alleged conduct to the March 2023 Article or its defamation claim.   *See* Compl. ¶ 19 (alleging generally that Defendants "contracted with consumers . . . [and] supply goods and services . . . in Florida" and promoted defamatory articles nationwide).

The record reflects that none of the Defendants conducted any activity related to the March 2023 Article in Florida.   Pragad Decl. ¶ 8; Cooper Decl. ¶ 9; Candappa Decl. ¶ 9. Cooper and Candappa reviewed and edited the article from New York or New Jersey, and Pragad played no role in the article at all.   Pragad Decl. ¶ 8; Cooper Decl. ¶ 9; Candappa

Decl. ¶ 9. Thus, Plaintiff failed to carry its burden of demonstrating that its claims arise out of or relate to Defendants' contacts with Florida. *See Wood*, 2025 WL 918078 at *17–*18 (concluding plaintiff failed to establish that his defamation claim arose out of or related to defendant's contacts with Florida where defendant's affidavit refuted claims that he produced the allegedly defamatory video in Florida and defendant's contacts with Florida did not relate to the defamation claim).

Plaintiff does not address the Due Process requirement of the personal jurisdiction analysis in its response. Notwithstanding, the Court will discuss the requirement in more detail so that the record is clear. With respect to a tort claim, courts apply the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). The effects test "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Moore*, 109 F.4th at 1362. The Supreme Court clarified *Calder* in *Walden v. Fiore*, and held that the mere fact that a non-resident's conduct impacts the plaintiffs with connections to the forum state is not sufficient to authorize jurisdiction. *Walden*, 571 U.S. at 291. Notably, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* Mere injury to a forum resident is not a sufficient connection to the forum state. *George & Co. LLC v. Spin Master Corp.*, No. 2:18-cv-154-FtM-38MRM, 2018 WL 5268754, at *10 (M.D. Fla. Sept. 13, 2018); *see also RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1241 (M.D. Fla. 2019) ("While the Complaint alleges that Defendant's actions were intended to cause harm to Plaintiff in Florida, the 'mere injury to a forum resident is not a sufficient connection to

the forum' to satisfy the 'minimum contacts' inquiry.") (citing *Walden*, 571 U.S. at 290);

*Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1247 (M.D. Fla. 2019) (same)).

As set forth above, Plaintiff's claim does not arise from any Florida conduct on the part of Defendants.   None of the Defendants own property or do business in Florida, and none of them conducted any activity related to the March 2023 Article in Florida.   Pragad Decl. ¶¶ 3, 6, 8; Cooper Decl. ¶¶ 3, 6, 9; Candappa Decl.¶¶ 3, 6, 9; *see also Wood*, 2025 WL 918078 at *18–*19 (plaintiff did not establish purposeful availment under traditional minimum contacts test where defendant's allegedly tortious conduct occurred outside of Florida and defendant's contacts with Florida were not sufficiently related to the cause of action).

Plaintiff also has not demonstrated that Defendants should have reasonably anticipated being sued in Florida.   *See Wood*, 2025 WL 918078 at *19 (Florida was not a "predictable forum" for defendant who did not live in Florida, have a Florida driver's license or bank account, or engage in substantial activity in Florida, and who recorded the allegedly defamatory video in Washington, D.C.); *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (concluding a lack of personal jurisdiction where plaintiff failed to establish the requisite minimum contacts based on the defendant's operation of an interactive website accessible in Florida and sales to only two Florida residents).

The Court underscores that Plaintiff does not allege that Defendants targeted the March 2023 Article at Florida in particular.   Indeed, Plaintiff claims that Defendants engaged in a "nationwide promotion and sale of the defamatory articles to consumers

across the country."   Compl. ¶ 19; *see also Wood*, 2025 WL 918078 at *20 (finding plaintiff could not satisfy effects test where he acknowledged the defendant "produces a YouTube channel that is broadcast in Florida as well as nationally").   Additionally, nothing about the March 2023 Article indicates that it was directed at Florida rather than a national audience.   The article is about California's investigation into Plaintiff, a California-based university, and only mentions Florida as one of several states where Plaintiff maintains campuses.   *See, gen.* Compl. Ex. A; *see, e.g. Moore*, 109 F.4th at 1364 (noting Alabama was not the focal point of social media posts calling a U.S. Senator a "child predator" and therefore effects test was not satisfied).

Finally, the Court concludes that exercising personal jurisdiction over Defendants would offend fair play and substantial justice.   Courts consider several factors in deciding whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice, including the burden on the defendant, and the forum state's interest in adjudicating the dispute.   *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1354 (S.D. Fla. 2007).   As Defendants contend, there would be a substantial burden on them if they were forced to litigate in Florida.   Defendants reside in New York and New Jersey, do not own property in Florida, and do not travel to Florida for work.   *See Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1267 (S.D. Fla. 2010) (recognizing the high burden put on North Carolina defendants to defend case in Florida).   Additionally, Plaintiff is not a resident of Florida, so Florida has little interest in adjudicating its claim.   Accordingly, the Court grants Defendants' motion to dismiss on the grounds of lack of personal jurisdiction.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendants' Motion to Dismiss (Dkt. 17) is granted.

2.      This action is dismissed without prejudice for lack of personal jurisdiction.

3.      The Clerk of Court is directed to terminate any pending motions as moot and

to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this July 10, 2025.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record